We have four argued cases on the docket today. The first case up is Terry v. McDonald. Case number 147044. Mr. Carpenter, it's my understanding you want to reserve five minutes for rebuttal? That's correct, Your Honor. Okay. You may begin. May it please the Court, Kenneth Carpenter appearing on behalf of Robert Terry. In this case, Your Honors, the Veterans Court misinterpreted the provisions of 38 CFR 3.304F3 when it held that it was permissible for the Board of Veterans' Appeals to determine that Mr. Terry's reported stressors were inconsistent with the places, types, and circumstances of his service, without having first obtained a medical opinion from a VA psychiatrist or psychologist as required by law. Under the correct interpretation of this regulation, consideration of the places, types, and circumstances of a veteran's service comes after and in conjunction with the report of stressors that are related to fear of hostile enemy activity and an assessment by a VA psychiatrist or psychologist. It is only after those two determinations are made that the Board is free to rebut the favorable determination by the VA psychiatrist or psychologist. It's important to note that even if there is a VA psychologist or psychologist referral, if the VA psychologist or psychiatrist determines that the stressors are not adequate to support the diagnosis of post-traumatic stress disorder, then the provisions do not apply. Is there anything in the text of the statute that supports your argument that it is sequential? The text of the regulation, you mean, Your Honor? I'm sorry. No, there is not, Your Honor, except for the fact that the regulation is framed in the conjunctive. In other words, each of the separate elements are with an and, which in my view means that they have to be considered in a sequential fashion and that you can't simply jump to the last one in order to nullify consideration of the former provision. Well, here's what I don't understand about the sequential argument and the requirement that you first have a medical assessment. Suppose you had somebody who on his second day in the Army, the day after enlistment, suddenly said, I'm terrified that I will be subject to hostile military action if I get sent to a combat area and claims PTSD based on that. Wouldn't it be appropriate in that circumstance to say that claim of PTSD based on when you're sitting at basic training on your first day is inconsistent with the types, places, and circumstances of your service and stop it right there and save yourself the need for going through a medical investigation? I don't believe so, Your Honor. I believe that the proper analysis would be whether or not that is an adequate report of a fear of hostile activity. In other words, you could kick him out on the ground that that isn't… That he doesn't need the first consideration as opposed to the last one. He never had the opportunity to have any type, place, or circumstance of service that would have produced the fear. But he's reporting a fear based upon an event or events that have yet to happen. Well, the events, he saw a newspaper article or something the day of that terrible combat injury. Well, I do not believe that that is the proper way that this regulation should be interpreted because it starts with the report of the fear. The regulation says if a stressor claimed by the veteran is related to a veteran's fear of hostile military or terroristic activity. So that's the first analysis. And I believe that you could, as you say, kick the claim based upon a determination that the claim stressor is not related to a fear. That there is no basis for that fear because there was no activity other than the enlistment on day one and the anticipation of what he or she might be involved with. This regulation, however, was written to deal with the circumstances that are, if you will, one notch below combat where the individual is involved in circumstances in which they are placed in circumstances in which they have a legitimate fear of hostile or terroristic activity. But isn't that what the point of the last clause is, that the places and circumstances clause? They have to make the determination of whether they were placed in that circumstance. And that's the whole issue in this case is when does the board appropriately get to that? Can they circumvent consideration of whether or not there was or was not a legitimate reported stressor by the veteran? And then whether or not based upon that reported stressor, there is a requirement under the regulation to go to a VA psychiatrist or psychologist. What do you do in the CAVC opinion that says that the board's discussion implicitly acknowledged that his stressor was related to fear of hostility? I'm looking at the final paragraph of the CAVC opinion. It seems to me that your case doesn't go anywhere unless you can get past that ruling by the CAVC. The CAVC is saying that the board implicitly acknowledged that your client's stressor was related to fear, right? Which means that that's a concession, if you will, that this analysis that you would want to have take place earlier took place. And with respect, Your Honor, that makes my case. Because if they implicitly made that finding, then they were required by the plain language of the regulation to obtain this necessary medical opinion. Because if there was a reported stressor that was related to a fear... Your client has been diagnosed with PTSD for a very long time. Yes, he had, Your Honor. But he had not been able to qualify based upon his lay evidence alone until July of 2013 when this regulation was amended. And that regulation allowed for lay testimony alone in combination with the verification, corroboration, validation... Provided that the claim stressor is consistent with the place's times and circumstances. Respectfully, Your Honor... There's a factual finding here. That's the third element of this regulation. You cannot leapfrog the middle element, which is that with that conceded fear, there has to be a medical opinion. If you interpret the regulation that way, Your Honor, you completely eviscerate the duty to assist. Because the duty to assist is to obtain evidence that would substantiate the claim. If there was an implicit finding here that there was a fear, then it was mandatory under the VA's duty to assist that they obtain this necessary medical opinion. Because that would have substantiated the claim. And then that would have shifted the burden to the VA... You're not fighting the conclusion here that if indeed he did have PTSD as a result of these stressors, it was inconsistent with the times and places? No, Your Honor. So we send this case back, right, at the expense of the taxpayers and an expectation of victory on behalf of your client, which is false. No, Your Honor. You're going to lose. No, no, no, no, because the burden under the regulation is that absent clear and convincing evidence to the contrary, if this diagnosis is found to be supported by the reported stressor, by a VA psychiatrist or psychologist, then they can't simply make the declaration that it's inconsistent. They have to have clear and convincing evidence to the contrary. In talking about the circumstances, heights, places, and circumstances requirement, I take it from the commentary that accompanied the promulgation of this rule that someone who is like my guy who is back at basic training or even in the medical corps back at Walter Reed Hospital, let's say, and sees a lot of victims of serious combat injuries and develops this fear. This person would not qualify. That would be outside of the places, types, and circumstances. Would you agree? No, I would not, Your Honor, because the way in which this regulation is structured, you go from the report of the fear... I understand, but I'm leapfrogging directly to the types, places, and circumstances. But with respect, the problem with leapfrogging is that the critical piece of this regulation is the insertion of a VA psychiatrist or psychologist assessment... Okay, well let's assume then that they held, that they did give this person an assessment, that the assessment was positive, that this person has PTSD. Based on looking at these soldiers at Walter Reed Hospital and developing a fear, he wouldn't qualify nonetheless. I don't believe you can make that absolute statement, Your Honor. But you will agree, wouldn't you, that the language in the commentary that accompanied the promulgation of the regulation seems to suggest the contrary. You're familiar with the language. Yes, I am, Your Honor, but no, I do not read that commentary the same way. I would suggest to you that the plain language of the regulation shifts the burden to the VA at the end. If you meet the first three sequential steps of a reported stressor that is supported by a VA psychologist or psychiatrist and it's related to service, then it says in the absence of clear and convincing evidence to the contrary and the circumstances are. So they're going to have to come up with clear and convincing evidence to the contrary to undermine that VA assessment. But are you saying they have to have clear and convincing evidence with respect to the question of the consistent with the places, types, and circumstances? That's in a separate clause. That is in a separate clause, Your Honor, no. What I'm saying is that the regulation has imposed an evidentiary burden that if you meet the first three hurdles that it says in the absence of that and if it's consistent. Is one of those hurdles that your claim stressor is consistent with the times and places? That's correct, Your Honor. What happens if it's been determined that they're not? Then that is a question of... That's what I was asking you earlier. I mean, here there has been a determination and you say you're not challenging that factual determination. No, Your Honor, but what I'm suggesting is, well, number one, the board in this case said that this regulation did not apply and that it only... I'm only talking about the CAVC opinion, which is what we're reviewing. The CAVC opinion says the board's discussion implicitly acknowledged that this stressor was related to the fear. Right? And we have a diagnosis of PTSD in the record. And I'm saying that that finding alone is not sufficient to rebut the VA's determination to their own psychiatry. Why shouldn't it be? Because this is a remedial regulation that allows for the first time lay evidence alone to support a diagnosis of PTSD and award compensation. Dr. Tyson was suggesting, I think, proving that if the types, places, and circumstances are such that no one on earth could believe that the stressor is military activity related, then why do you need to burden the society with the costs of the undertaking that you urge? Because of the nature of this system and the particular nature of this regulation. This regulation was designed for the first time to give those persons who have a diagnosis of post-traumatic stress disorder the opportunity to get compensation based on their lay testimony alone. And if you allow the VA to simply pull the plug on a claim by declaring that those stressors as reported are not consistent, then you've negated the guts of this regulation. Why is that so? Because the guts of this regulation are that the function of the VA's assessment is to corroborate, to validate the lay testimony about what happened. That's what the CAVC is saying the BVA implicitly did in this case. I disagree that that's what they said. Well, who are they in that sense? The CAVC? CAVC. Let's look at the language. The board's discussion implicitly acknowledged that this stressor was related to a fear of hostile military or terrorist activity under the regulation, meaning that the veteran's lay testimony is sufficient. Yes, Your Honor, and therefore he was entitled to an examination. And if he had gotten that examination and that examination was favorable, then... And if there had then been a factual determination that he didn't satisfy the types, places, and circumstances, do you think he still prevails? He would have the opportunity to test that in an appeal to the Veterans Court as to whether or not that determination was clearly erroneous based upon the entire record. You had an opportunity to test that here. Oh, I disagree, Your Honor. There is no VA examination post-July of 2013 that complied with the provisions of the regulation. The examination would just tell us whether he had PTSD. No, no. Not whether he was in a place where the circumstances, types, and places, circumstances were satisfied, right? No, Your Honor. In fact, in this case, this Court's decision in Nova that challenged this regulation initially, the VA conceded that the VA examiner does not make a determination of the diagnosis. They only make a determination as to the correlation between the reported stressor and whether that stressor is adequate to support the diagnosis. Right, right. But it's all about the stressor. It is all about the stressor. And whether the stressor is adequate to lead to PTSD has nothing to do with where the stressor was incurred, right? Which gets us to the types, place, and circumstances requirement. That's correct, Your Honor. So I don't see how that would help him deal with the problems he would encounter with the types, place, and circumstances requirement. It's not a question of whether it would help them. It's a question of whether or not they considered the entire record when they made that determination. That determination was made without the benefit of the validating assessment by a VA psychiatrist or psychologist. This case was remanded for that express purpose. I'm sorry, Your Honor. We're way past time. So we've eaten up all your rebuttal and then some. We'll restore three minutes and we'll give an extra three minutes to the government. May it please the court. There's no necessity for another examination by a VA psychiatrist or psychologist in order to address the first element of the regulation. The first element is whether the claim stressor relates to the veteran's fear of hostile military or terrorist activity. As stated on page seven of the court's opinion, the board implicitly found that that element of the regulation was met. Can you point to me in the BVA opinion where that implicit finding was made? The way I understand the VA opinion, the board opinion, is that it makes an explicit... Why don't you look at the opinion and tell me where in the opinion that implicit acknowledgment is recorded. I will. Okay. On JA 98 and JA 124, the board talks about his service as a combat medic and the fact that he was not awarded a medal or decoration indicative of combat service. That's as close as I could see that the board got. The way I see it is on page 124 where the board finds that there are three alleged stressors, and they find that two of them are not related to a fear of hostile military or terrorist activity. That's on the top of page 124. That deals with the gun accident and the sexual abuse, right? Excuse me? The two stressors that are thrown aside are the gun incident, injuring the gun, and the sexual abuse. Correct. So Mr. Carver, he's not pitching his case on those. He's pitching his case on the fact that the veteran, while serving as an ambulance driver, orderly or whatnot, witnessed some real awful scenes over in Japan. Exactly. So where is this implicit acknowledgment? Where on page 124? The right and left are not related to, okay, it's the first sentence on the top of 124. In the case at hand, veterans' reports of being sexually assaulted as well as the basic training incident, quote, are not related to a fear of hostile military or terrorist activity. But it's the next paragraph that they get to the question of the combat medic status, right? Excuse me? It's the following paragraph that deals with the combat medic status. I take it the first paragraph or the first two sentences on that page have nothing to do with the issue in this case. Because those deal with the sexual attack and the rifle explosion. The point is that there was silence in the board opinion with regard to this element. The element meaning related to a fear of hostile military or terrorist activity. And the veterans' court read that silence as being an implicit conclusion that that element of the regulation was false. I don't get that. The BVA directly dealt with his reports of serving in the DMZ in Korea. And that's as a result of that service, he went once on an airplane to Japan, correct? Correct. And they're saying that regard to service of combat veterans, that consequently the stressor isn't consistent because he didn't serve as a combat medic. There's no combat service. Isn't that what they were saying? Yes. That's Mr. Carpenter's primary argument on the merits of this case as opposed to the procedural aspect. Correct. What I'm looking for is where is the implicit acknowledgment. As I said, the way I understand the board's decision, and I think the way the veterans' court read it, was that there was an explicit finding for two of the stressors not being related to the fear of hostile military. Of course, we know that. We know that. Mr. Carpenter isn't even arguing that. He's arguing that he's entitled to the fear of military and hostile military activity based on the events of what the veterans saw when he was witnessing the people being loaded on the airplane. But the question is whether the veterans' court misinterpreted the regulation. And the veterans' court... Let's assume that the BVA had written an opinion that said, because you didn't serve in combat, you lose. Is it required under the regulation that a veteran have a stressor that results from his own service in combat? The answer is no, right? Correct. It's much wider. Let me just ask you a related question. This opinion focuses on Mr. Terry's service as a combat medic, right? Yes. Can you point to me anywhere in the record that Mr. Terry ever advertised himself as a combat medic, seeking relief as a combat medic? I draw your attention to page JA39 in the record. Can you bring the record? Very early in the examinations, there is a psychiatrist examination which reports that Mr. Terry served in Vietnam. I know he served in Vietnam. We know that. I'm just asking you these magic words, combat medic. That's what hung him up below. I'm asking you where did he ever ask for relief as a combat medic in the record? You should know the record. I direct your attention to page JA39 in the record. Maybe you would like to look at that, JA39? I've looked at that before. You have, and that's his statement in support of the claim? Correct. That's what he's asking for, right? Yes. Does he ask for relief as having been a combat medic? Not there. Not there, is he? What's he ask for? He says I was an ambulance driver. As I said, the only thing that I know of is early on, and I don't know whether it was a misunderstanding between the psychiatrist. Mr. Terry's had like three trips to the BB, maybe four, right? And all of his trips up until the last one, he was going there under a regulatory regime in which he could only succeed if he had had combat experience, because that was the only way an uncorroborated assertion of a stressor could succeed before 2010, right? Correct. So it's not surprising that the BVA early on is looking at, do you have any combat service? Because he is totally on this claim of having seen bodies and stuff, as opposed to the sexual abuse and the gun incident. He is totally uncorroborated, right? Correct. He never could have succeeded in the first three trips, two trips to the BVA, except as a combat veteran, right? So it's not surprising there's all that focus. No, it's not. And as I said, very early on, there is a notation where somebody thinks he served in Vietnam. That's a psychiatrist that examines him, writes down in the notes that he served in Vietnam. Right, but he wasn't an ambulance driver or a medical specialist, which is how he describes himself in Vietnam. He only says that he served in that capacity in the DMZ. Correct. All right, so I think the point here is that this regulation, the purpose of this regulation is to get to circumstances that could be stressors even if there's no actual combat, right? We agree, yes. All right, so the fact that in the second paragraph on page 124, JA124, they emphasize that he never got a combat medal for combat service seems to be inconsistent with what the places, types, and circumstances should be looking at for purposes of this regulation. What Mr. Terry alleged was that he was in a very stressful situation being assigned to accompany a soldier out of Korea to Japan and then back to the United States. And it was on that assignment that he allegedly saw all these wounded soldiers and became traumatized, according to Mr. Terry's own statement. And what the board found is that there was no support in his personnel records for that alleged assignment. The personnel records only show him being assigned to Camp Casey, which is approximately... Where is that? It's approximately 13 miles... This is exactly what you said. The words you just said, that he was only assigned to Camp Casey. Where is that in the records? It's not in the joint appendix. Well, now, that's fair game? It is exactly... It's in the appendix that was before the court. Camp Casey is 13 miles south of the DMZ. So it's where he was assigned. But there's nothing in the record before us that shows a board finding that says it was inconsistent with the place's types of circumstances because there's no record that he actually accompanied this soldier and saw these burned soldiers and others that were harmed. All it says is he didn't get a combat medal. The finding by the board, and it's not challenged on appeal here, but the finding by the board was that the claims stressor is not consistent with the places, types, and circumstances of the veteran's service. Where does the board explain how they got there other than saying he wasn't in combat? They explain that they based it on his personnel records. Where do they say that? I think it's in there several times. One example is at page 127. The veteran's personnel records do not support the veteran's reports of serving as a combat medic. And there are other points in the opinion where they refer to personnel records. They clearly were basing the finding on the personnel records. And as I said, that factual finding was not challenged by Mr. Terry in his brief before this court. If it had been challenged, we would have placed the personnel records in the joint appendix. But the factual finding is not challenged. Well, because the way in which the personnel records are advertised on page 127 is connection with his service as a combat medic. Right? And that connects back to page 124 when he's a combat medic that he doesn't have any service in combat. I mean, to be fair to Mr. Carpenter, he is challenging. He's saying the way he reads what the BVA did was to say, you threw my client out because he doesn't have any exposure to combat. That's the way Mr. Carpenter is reading the BVA opinion. And he's reading the CAVC opinion as being incorrect when it says there's an implicit acknowledgment to the contrary. And our questions from the bench to you have been, now maybe, I saw the reference to his records, to his personnel records, and I wondered whether there may be something in the personnel record that showed that he never went to Japan. Well, there's nothing that supports that he went to Japan. There's nothing that supports that he had this assignment to accompany the soldier to Japan. There's nothing that supports it. But he doesn't need it. I mean, you can challenge that his records don't show that he did that service, but he gets the benefit of the doubt when he alleges he did that service. It's your duty to undercut that with these records you say you've got back at the office someplace. It's his burden to show that the claims stressor is consistent with the places, types, and circumstances of his service and what the personnel records before the board and before. I understand. But I mean, assuming that he had been saying that he had actually been, these people had been flown from Vietnam to Korea and right there in Korea he had witnessed the bodies coming and the injured people coming off the one plane they put on the other that put him more proximate. They wouldn't have had to go to Japan. But is your case now turning on a military record that we haven't seen that says that he never flew on the airplane? There's no record that shows he ever served in going to Japan? There is a factual finding by the board that the veterans claims stressor is not consistent with the places, types, and circumstances of the veteran's service. That's a factual finding. We did not take Mr. Carey. Because it says there is no mention of exposure to combat. Consequently. What does the consequently refer to? I'm looking at page 124. In terms of exposure to combat, it doesn't necessarily have to be read in terms of him being in actual combat. The question would be, is he exposed to other people who have been in combat? He's saying he was. He's saying I saw him, I rode on an airplane with one. I understand that. But the factual finding is that the personal records do not support that. And the personal records, as I said, they're not in the joint appendix. If the court really wants to see them, we can supply them. They were before the court. What they show is he was assigned to Camp Casey, 13 miles south of the DMZ. And there's no dispute that he was assigned in an area close to the DMZ. No dispute at all. What is the point, then, in the regulation that says the veteran's lay testimony alone may establish the occurrence of the claims in service stressor? Because if you're saying that inconsistent with the types and places means that he needs more than his lay evidence, it means more than his testimony, then what's the point of that phrase, saying lay evidence alone, lay testimony alone? There has to be some evidence that the claims stressor is consistent with the places, types, and circumstances of the veteran's service. And there was absolutely no evidence that that was the case. As I mentioned, it's not supported by the personal record. Just parse what you just said. There's no evidence. He says, I'm serving part of my duty just to ride on an airplane with someone, right? And I'm riding with that person that's injured. I mean, if you took this and put it back into a behind-the-lines combat situation, so you weren't actually where the guns were going off, but you were back well behind the lines and somebody was dealing with this situation, you would think it would be a stressor, right? I agree, but these are two different requirements. The question is, did the claims stressor occur? That's one question. But that's not what's asked in the provided clause. The provided clause goes only to whether the claims stressor is consistent with the type of service. What do you think? I'm sorry. Go ahead. I just wanted to say that there's a factual finding that the claims stressor in this case is not consistent with his service. And that factual finding was not challenged in the brief to this court, nor was it challenged below. What do you think is the proper definition of the kind of types, places, and circumstances requirement, vis-à-vis how close you have to be to combat itself? Because it seems to me that that is one of the problems here is we don't have a very precise definition of just how close you have to be. Obviously, if you're in combat, you're covered. No question. But this regulation, as we all agree, covers something more than that. But it doesn't cover, as the regulation itself says, and as the commentary that accompanied the promulgation of the regulation indicates, it doesn't cover somebody who is a non-deployed veteran back at wherever it is in the United States who develops this concern, fear, that he may be subject to this kind of thing. Or he sees people who are subject. That seems to me not to be within the types, circumstances, and places. How would you define what the regulation means by that term? I can give a hypothetical and work at it that way. For example, if he was in a situation where his regular duties didn't put him in combat, but soldiers were being transferred, and he was part of the chain of taking care of these soldiers who were then very, very severely wounded, and he was close, close to the occurrence, but not in combat. So that would be foreseeable. But close, does he have to be on the medevac helicopter? What if he's in Saigon, and he's at a hospital in Saigon, and these guys are being brought in, versus at a hospital in Japan? Is there a difference there? Or where would you draw the line? If he's close enough that the fear of hostile military and terrorist activity is a reasonable thing to expect, that he would have this type of fear. The fear is that it's going to happen to him, to the person that's having the stressor? That nobody has looked at that issue. I mean, is the fear a personal fear, that the bad guys are going to come out of the trees and get me? Well, either personal fear or fear that it's going to happen to somebody that is very close to him, in terms of time, space. Because if you look at the last phrase of the regulation, where it says, it talks about the veterans or others, and then it says from an actual or potential, to give examples, explosive device. So if it's not going to happen to him personally, it would happen to someone else very close by, in terms of seeing it, hearing the explosion, close in time and circumstances. Time and space. Do you have a quick comment on Mr. Carpenter's what I'll call procedural aspect of this case? He believes that the case was processed out of order. His view is that you can't decide a case consistent with places, times, and circumstances alone. You have to go through a sequential step. The Veterans Court addressed that very clearly on page 7 of their decision, where it addressed whether there is a necessity for a remand. And the Veterans Court said that a remand would be of no benefit flowing to the veteran. That is precisely the case here. Please, that comment was in respect to sending it back to the DBA to make it clean up its opinion. That sentence, that you're accordingly, even if it couldn't provide a clear explanation? That there is no necessity for a remand because the result wouldn't change. There's no necessity for a remand in the CAVC's opinion because the DBA did the right thing. And it's not worth the taxpayers' money to send it back and get an explanation. That's not Mr. Carpenter's argument. Mr. Carpenter says that as a matter of law, interpreting the regulation, you can't knock a case out on the provisional clause up front. And what is your response to that? Our response is that this regulation has several elements. And one of the elements is that the claim stressor has to be consistent with the places, types, and circumstances of the veteran's service. And that factual finding was made against the veteran. So if you had a remand, and if you had yet another examination by a VA psychiatrist or psychologist, there would be no benefit flowing to the veteran. Mr. Carpenter argues that the burden of going forward at least shifts once the veteran is in hand of a stressor that passes the test. And a psychiatric or psychological exam that his PTSD comes from that stressor. Then Mr. Carpenter says the government has a clear and convincing standard that it has to come in to show. I don't take his argument that way. The clear and convincing part, that phrase… He said that. He uttered those words during his argument. Did you hear him? But he also acknowledged that the phrase, in the absence of clear and convincing evidence to the contrary, applies to the other elements. It doesn't apply to the provided clause. Well, what he conceded was that it's in a different clause. He didn't really concede that it didn't apply. But we're way past your time, so we're going to have to move on. We've got other people waiting to argue. Mr. Carpenter, we'll give you your full five minutes since we went so far over with the government. Thank you, and I'll try not to use it all. I'd like to direct the Court's attention to the Joint Appendix at page 115, at the very bottom, where the single finding of fact made by the Board in this case, when it went back for consideration of this regulation, was that the most probative evidence of record does not reveal that the veteran has PTSD that is causally or etiologically related to verified in-service stressors. That finding of fact is not based upon F3. F3, if correctly applied, provides the verification, vis-a-vis the assessment by a VA psychiatrist or psychologist. As this Court's inquiry with the government demonstrated, there is no clarity as to what the reported stressor is here. The government wishes to rely upon the trip to Japan with a particular patient as the stressor that is not verified. But, of course, that defeats the entire purpose of this regulation, which is that the lay evidence can provide that missing component if corroborated or verified by a VA psychologist or psychiatrist as adequate to support the diagnosis. But are you saying that the Board did not advert to F3? I do not believe that they did, Your Honor. Because if you look at the paragraph that we've been talking about on 124, the Board specifically says, as such, the July 2010 amendment, that's F3, is not applicable to this reported stressor. That seems to me to be a clear reference to F3, right? In the body of the decision, they did. In the finding of fact, I believe they did not. That in order to apply F3, they needed to make a finding of fact as to whether or not this reported stressor was based upon fear. And they didn't make that finding a fact. They do, but when they do it, as this Court clearly has demonstrated in their inquiry with the government, is they were talking about combat. They had a fixation that Mr. Terry's reported stressor was that he was a combat medic. He never reported that he was a combat medic. He was an ambulance driver, a medical orderly. And in that capacity, he had certain responsibilities. Those responsibilities developed the fear that is the basis for his diagnosis of post-traumatic stress disorder. That fear has to be assessed by a VA psychiatrist or psychologist. What the Board did here was to conflate the requirements of F3, which is for combat, with F3. F3 does not require combat. If they had properly analyzed F3, as they were tasked to do in the remand from the Veterans Board, then they would have had to address each of the elements of F3, which they did not. They only went to the very last one. With that, unless there's any further questions, I'll finish my argument. Thank you very much, Your Honor.